UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| V. | ) CASE NO.: 2:23-cr-325 |
| | ) |
| MEKHI DIWONE HARRIS, | ) |

**SENTENCING MEMORANDUM ON BEHALF OF MEKHI HARRIS AND MOTION FOR DOWNWARD DEPARTURE**

COMES NOW Attorney, Michael W. Whisonant, Jr., and respectfully submits the following Sentencing Memorandum on behalf of Mekhi Harris.

Mr. Harris has accepted responsibility for his actions and plead guilty to Count 1 of the Superseding Indictment, conspiracy to commit wire fraud.

Mr. Harris stands prepared to accept imposition of sentence and respectfully asks this Honorable Court to sentence him to 60 months. Such a sentence is sufficient but not greater than necessary to achieve the goals of sentencing pronounced in 18 U.S.C. §3553.

Mekhi is not the same person he was when he committed the offense for which he now stands before this Honorable Court to be sentenced for. The character letters submitted on his behalf make clear what he has overcome, what he continues to overcome, and the man that he is today as well as the man that he strives to be. *Exhibit A.*

> "During this time, he has grown immensely. He has been baptized four times, encouraged friends and family to be baptized, helped in the church, changed his style and appearance, shifted his mindset, undergone tattoo removal, lost 70 pounds, become a vehicle technician, started Invisalign, become a truck driver, and is now my husband. Although his family had strongholds and generational curses, God had other plans for him…"

- Words from Mekhi's wife, Alexis Harris.

## I.     History and Characteristics of Mekhi Harris

Mekhi is a 24-year-old father, determined to provide a better life for his young family. Raised in Birmingham, AL by his mother, Mekhi grew up in the harsh reality of poverty. His childhood was marked by significant challenges, including abuse by his mother's boyfriend and the absence of a relationship with his father. Tragically, Mekhi only spent two days with his father before his passing in 2018.

As his wife eloquently details in her character letter, Mekhi grew up feeling unloved, left out and forced to mature faster than most. These experiences have profoundly shaped Mekhi into the man he is today – one who openly acknowledges his past mistakes but is equally committed to overcoming them. Mekhi is driven by a sincere desire to be present in his daughter's life and to ensure her future is brighter than his own.

Despite his aspirations, Mekhi's journey has been far from straightforward. After attending Alabama A&M for two (2) years, he was forced to leave college due to him needing to provide for his daughter and his struggles with addiction. His battle with substance abuse, which began in 2018, eventually derailed his education further and led to his move to Texas.

> "I vividly remember the first time I saw Mekhi take a pill during holiday break. Concerned, I asked him about it, and he shared that school pressures were becoming overwhelming."

- Words from Mekhi's Aunt, Carla Willis

> "When Mekhi confided in me about his struggle with pill addiction, I felt a sense of failure as an older brother. I didn't know exactly how to help, but I did what I could. Since overcoming his addiction, Mekhi has continued to be a wonderful father to my niece. His bond with her is extraordinary, and their relationship is one of the strongest I've ever seen.

- Mykayl Harris, Mekhi's older brother

Since his arrest Mekhi has not stuck his head in the ground like many white-collar defendants but rather made tremendous strides in turning his life around. He has obtained employment, remained in his daughter's life, married Alexis and become a productive member of society. Mekhi worked at Mercedes and learned to operate a forklift for about a month a half before having to leave the job due to the length of the commute. Mekhi worked hard to obtain his Commercial Driver's License (CDL). He now works at Express Oil in the Crestwood area of Birmingham.

Numerous character letters have been submitted in support of Mekhi Harris. *Ex. A*. Rev. McConnell married Mekhi and his wife Alexis. The Reverend did not know of Mekhi's legal troubles and was extremely impressed with the way Mekhi presented himself, and how he makes every effort to raise his daughter.

> "When we met in a pre-wedding session, I was deeply impressed by Mekhi's desire to include his young daughter in his and Alexis's ceremony. I was impressed because so many young men in today's world don't seem to take an interest in their children once separated from their spouse/partner…."

- Words from Rev. Allan McConnell - Ex. A – Character Letters



Mekhi has also made an impression on his wife's family, who have seen the upward trajectory of his life firsthand.

> "Since we first met, Mekhi has grown into an amazing husband and a devoted man of God. I have had the privilege of witnessing his spiritual transformation every step of the way. He has become the son-in-law I have always hoped for, treating our family with the utmost respect, and calling me "Mom" with genuine affection. The love he shows for his daughter, now our granddaughter, is truly heartwarming."

- Words from Patricia Burrell, Mekhi's mother-in law.

Mekhi also impressed others he has come into contact with, so much so that they wrote letter in support of him.

> "He has been reliable, has a great attitude, and demonstrates a strong work ethic. He is also one of the first people to jump into action when work starts to pile up. My overall experience with Mekhi has been excellent. As someone who has worked with him directly for an extended period, I can confidently say that I have been impressed by his character and his ability to learn."

- Words from Reed Pierce, supervisor.

> "For several months, he visited Alexis Reedy, who was renting our guest house. During this time, we found him to be kind, respectful, and helpful. We had many wonderful conversations with him. Mekhi and Alexis are a precious couple, and I had the opportunity to meet his little daughter. They are fabulous parents, and Mekhi appears to be a good provider. We wish him the best in his future. "

- Dave and Joni Parish, rented guest house to Alexis Reedy

## II. Nature and Circumstances of the Offense

Mr. Harris has plead guilty and accepted responsibility for his role in Conspiracy to Commit Bank Fraud and Wire Fraud in violation of Title 18, United States Code, Section 1349. Mr. Harris bought stolen checks from postal workers and sold those checks on his Telegram channel. Mr. Harris made approximately $160,000 off of this illegal activity which is reflected in the agreed upon forfeiture amount. Mr. Harris also helped others with their Telegram channel to sell stolen checks. What Mr. Harris simply saw as checks, he now sees as the proceeds of honest, hard working citizens and businesses. Those people, businesses, and associated banks were harmed. They were denied the money that they worked hard for, and many were forced to use their time, energy and resources to correct the problems caused by missed payments and to make

sure payments went to the appropriate party/vendor.

Substance abuse unfortunately allows people to look past the harm they are causing in order to feed their addiction. Mr. Harris has now been sober for over a year, and he realizes the gravity of the harm he has inflicted upon these businesses and individuals. He looks forward to apologizing to them publicly in open court.

### III. Request for Downward Variance

The ultimate command of 18 U.S.C. 3553(a) is, after considering the following factors, to impose a sentence that is "sufficient, but not greater than necessary", to comply with the purposes set forth in subsection (a)(2). This is the so-called parsimony provision, which requires District Courts to *impose the minimum punishment needed to satisfy the purposes of sentencing*; those being just punishment, deterrence, protection of the public and the rehabilitation of the defendant.

The intended loss over inflates the guidelines for Mr. Harris. *See* §2B1.1(b)(1)(K). Intended loss in this case was calculated using all the checks posted on the "work related" channel. This came out to be $14,390,075.20 based on 1,812 checks. This resulted in an offense level of 38, which with a criminal history category of I results in a guideline imprisonment range of 235-293 months.

A district court may not presume that a Guidelines range is reasonable. *Gall v. United States,* 552 U.S. 38, 50 (2007). The Guidelines are "the starting point and the initial benchmark" in determining a sentence, but a court must make an individualized assessment based on the sentencing factors in 18 U.S.C. §3553(a) and impose a sentence sufficient, but not greater than necessary, to accomplish the goals

6

of sentencing. *Id*. at 49-50. In this case the application of the guidelines results in an unreasonable guideline range.

This is made clear by other offenses which result in an offense level lower than Mr. Harris's 41 before acceptance of responsibility:

1. If the Defendant committed or attempted to commit criminal sexual abuse and was convicted under 18 U.S.C. § 2241(c) (the victim was a minor under 12 or between the ages of 12 and 16), and the minor was under the custody, care, or supervisory control of the Defendant, the level of the offense is **40**. (38 + 2).

2. If the Defendant committed or attempted to commit criminal sexual abuse and was convicted under 18 U.S.C. § 2241(c), and the victim sustained serious bodily injury, the level of the offense is **40**. (38 + 2).

3. If the Defendant is convicted of selling or buying children for use in the production of pornography, the level of the offense is **38**.

4. If the Defendant is convicted of sexually exploiting a minor by production of sexually explicit visual or printed material, the victim was under the age of 12, the offense involved the commission of a sexual act or sexual conduct, and if the Defendant was a parent, relative, or legal guardian of the minor involved in the offense, the level of the offense is **40**. (32 + 4 + 2 + 2).

5. If the Defendant was convicted of kidnapping, the victim sustained permanent or life-threatening injuries, the defendant used a dangerous weapon, and the victim was not released before 30 days had elapsed, the level of the offense is **40**. (32 + 4 + 2 + 2).

6. If the Defendant is convicted of second-degree murder, the level of the offense is **38.**

7. If the Defendant is convicted of robbery, and the defendant discharged a firearm, caused the victim to sustain permanent or life-threatening injury, and the loss exceeded more than $9,500,000, the level of the offense is 40. (20 + 7 + 6 + 7).

8. If the Defendant is convicted of sex trafficking under 18 U.S.C. § 1591(b)(1), and the defendant was a parent of the minor, and a participant in the

7

offense unduly influenced a minor to engage in prohibited sexual conduct, the level of the offense is 38. (34 + 2 + 2).

Clearly Mr. Harris's conduct does not rise to the level of sex trafficking or kidnapping. Shockingly, there are many crimes that result in a lower offense level than Mr. Harris:

1. If the Defendant is convicted of stalking or domestic violence, and if the offense involved bodily injury, strangulation, possession or threatened use of a dangerous weapon, and a pattern of activity involving stalking, threatening, harassing, or assaulting the same victim, the level of the offense is **22**. (18 + 4).

2. If the Defendant is convicted of criminal sexual abuse of a ward or an individual in federal custody, the offense involved the knowing misrepresentation of a participant's identity to persuade, induce, entice, or coerce a minor to engage in prohibited sexual conduct, and if a computer or interactive computer service was used to persuade, induce, entice, or coerce that minor to engage in that prohibited sexual conduct, the level of the offense is **22**. (18 + 2 + 2).

3. If the Defendant is convicted of arson or property damage by the use of explosives and the Defendant knowingly created a substantial risk of death or serious bodily injury to any person other than a participant in the offense, the level of the offense is 24.

4. If the Defendant is convicted of engaging in abusive sexual contact, and if the victim was under the age of 12, the victim was in the custody, care, or supervisory control of the Defendant, the offense involved using a computer in the knowing misrepresentation of a participant's identity to persuade, induce, entice, or coerce a minor into engaging in prohibited sexual conduct, and if the offense involved conduct such as the use of force or threats, rendering the victim unconscious, or forcefully administering a drug or intoxicant to the victim, the level of the offense is 30. (20 + 4 + 2 + 2 + 2).

5. If the Defendant is convicted of transferring obscene matter to a minor, the offense involved distribution to a minor that was intended to persuade, induce, entice, or coerce the minor to engage in prohibited sexual conduct, the offense involved the use of a computer or an interactive computer service, and the offense involved material that

portrays sadistic or masochistic conduct or other depictions of violence, the level of the offense is 23. (10 + 7 + 2 + 4).

Neither of these are by any means an exhaustive list, however they do paint a clear picture of the draconian nature of the intended loss application. This is made clear in a case such as this with such a vast difference in actual loss and intended loss.

In this case, while the total value of all the checks posted was roughly 14 million, obtaining that full amount was at the very least unlikely to occur, and a sentence based on it flies in the face of the §3553(a) factors. *See United States v. Johnston,* 620 F. App'x 839, 857 (11th Cir. 2015) (per curiam) (affirming district court's use of higher intended loss, rather than actual loss, but noting that where intended loss amount is impossible or unlikely to occur, it may impact the substantive reasonableness of a sentence).

The loss actually caused by Mr. Harris in this case is $1,011,777.19. A far cry from the 14 million "intended loss" resulting in a guideline range of 235-293. This resulted in an increase of 6 levels to Mr. Harris's offense level and almost a decade longer guideline sentence.

This case is a perfect example of why, in light of the Supreme Court's decision in *Loper Bright,* the guidelines, should be afforded less deference. *Loper Bright Enterprises v. Raimondo,* 144 S.Ct. 2244 (2024).

Mekhi Harris is on the right path and in the process of turning his life around. His addiction absolutely contributed to the wrongs he has committed and for that he is deeply remorseful. He has a lot of good left to offer the community and his family.

So much so that a 235-293 sentence is extremely harsh and not in line with the §3553(a) factors.

> "I believe that Mekhi is at a crucial point in his life where he is ready and willing to embrace change. He has expressed a sincere desire to grow and contribute positively to society. I am confident that with the right support and opportunities, Mekhi can overcome the challenges he currently faces and become a productive, law-abiding citizen. …. He is not just a young man who made mistakes, he is someone who has the potential to change and to help others avoid similar pitfalls. I stand ready to support him in any way I can."

- Words of Daniel Rumley, member of Men's Fellowship church group

### IV. Motion for Downward Departure for offense level "substantially overstating the seriousness of the offense".

Application Note 21(C) to §2B1.1 states a downward departure may be warranted where the offense level "substantially overstates the seriousness of the offense." As expanded on above, the extremely high offense level for Mr. Harris overstates the conduct for which he has accepted responsibility. Mr. Harris is by no means arguing that his offense is not serious, now more than ever before he realizes the harm that he has put so many people through. However, given the types of crimes with a similar offense level it is painfully clear Mr. Harris's conduct does not fall into the same category and should not be punished as such.

Additionally, while the offense level is calculated as a 14-million-dollar fraudulent scheme, this is a far cry from a 14-million-dollar fraudulent scheme. The actual loss caused by Mr. Harris is $1,011,777.19 and Mekhi personally obtained $160,000, per the forfeiture agreement. The actual loss in this case is approximately 7% of the intended loss. Our Supreme Court has stated, "…the presumption of liberty

remains crucial to guarding against over-punishment." *United States v. Bass*, 404 U.S. 336, 348, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971).

## Conclusion

Undersigned counsel submits that an appropriate sentence in light of the objections to the presentence report and the history and characteristics of this specific individual is a sentence of 60. Such a sentence would be appropriate under the circumstances of this case and this defendant and would substantially meet the needs of sentencing as pronounced in 18 U.S.C. § 3553(a).

RESPECTFULLY SUBMITTED,

*l/s Michael W. Whisonant, Jr.*
MICHAEL W. WHISONANT, JR.

OF COUNSEL:
JAFFE, HANLE, WHISONANT & KNIGHT, P.C.
2320 ARLINGTON AVENUE SOUTH
BIRMINGHAM, AL 35205
205-930-9800

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this the 4th day of September 2024 served a copy of the foregoing by electronically filing to all parties involved.

*l/s Michael W. Whisonant, Jr.*
MICHAEL W. WHISONANT, JR.